**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION**

| | | |
|---|---|---|
| TOMMY MORRISON d/b/a MORRISON MOTORSPORTS and MORRISON ENGINEERING and TOMMY MORRISON MOTORSPORTS, INC., | : : : : : : | |
| Plaintiffs, | : : | |
| vs. | : : | 1:03-CV-140 (WLS) |
| EXXONMOBIL CORPORATION CONSTRUCTION MILLWRIGHT, INC., and ENGLEHARD CORPORATION, | : : : : | |
| Defendants. | : | |

**ORDER**

Presently pending before the Court is Defendant's motion for summary judgment. (Tabs 32). For the following reasons, Defendant's motion for summary judgment (Tab 32) is **DENIED**. Also, pending are Defendant's motions for sanctions (Tab 27) and to strike Plaintiff's expert's submissions. (Tab 51). For the following reasons, Defendant's motion for sanctions (Tab 27) is **DENIED** and Defendant's motion to strike (Tab 51) is **DENIED.**

**DISCUSSION**

This case arises out of a contractual relationship between Defendant Mobil Oil Corporation ("Mobil") and Plaintiff Tommy Morrison ("Morrison"). For a number of years, Morrison was engaged in automotive racing and testing. Morrison gained notoriety as a racer of Corvettes and had input with General Motors ("GM") in improving the engineering of the

1

street production Corvettes.  In 1984 Mobil became a sponsor of Morrison's race team.  Over the next few years Morrison's Corvette racing team, with Mobil and other sponsors, became the dominate race team in long distance stock car racing.   As a result of his racing experience and knowledge of the Corvette, Morrison developed a close relationship with GM employees, engineers and executives.

It is not completely clear when, but sometime during the early part of their relationship with Morrison, Mobil developed and began marketing a synthetic motor oil.  The oil was more expensive than those normally used in most automobiles but was more durable.  In 1987, Morrison and Mobil entered into an additional relationship whereby Morrison entered into one year personal service contracts with Mobil.  Copies of the 1993, 1994, and 1995 contracts, show that one aspect of the personal services contracts was to help improve Mobil's business relationship with GM.  The 1995 contract stated:

> "TM shall use his best efforts to facilitate the development of business relationships between Mobil and General Motors, including but not limited to efforts to have Mobil 1 synthetic oil designated as original factory fill for automobiles manufactured by General Motors."

The 1993 and 1994 contracts identified the particular GM manufacturing division and provided for a monetary bonus for achieving the goal.

In 1995, for various reasons, Mobil terminated its racing sponsorship agreement with Morrison.  Though its not clear from the record, its appears that Morrison ended his career of racing Corvettes at the same time.  On September 14, 1995, in a letter from Mobil Manager D.J. Salamack, Mobil formally informed Morrison of its intent to end the sponsorship relationship.  In the letter, Mobil proposed concentrating on the personal services contract and

proposed renegotiating the contract for a three year term.  It appears from the record, that from that point on the parties continued their relationship without a formal contract.  The record contains reports and other items illustrating the fact that Morrison believed he had some sort of contract with Mobil for personal services.

On January 27, 1997, another Mobil executive wrote Morrison a letter explaining that the 1997 contract, which was being revised, would provide a fixed amount for personal services and a "variable pay component which will allow you flexibility to earn additional compensation based on the accomplishment of specific objectives."  It is not clear if the attachment is a copy of the contract or a synopsis of the terms and the bonus schedule.  It is also not clear whether a written contract was ever executed.

A letter, dated January 30, 1998, from Mobil proposed using a similar contract as the one proposed for 1997.  The 1998 letter contained the proposed term which stated "[a] Mobil endorsed agreement for Mobil 1 factory fill in a major General Motors vehicle line-$xx."  This proposed term, according to the Mobil letter, "will be considered above and beyond the scope of the personal services contract and will be compensated at the contract fee."  The record does not contain a copy of the actual or proposed written agreement.

According to Morrison, he was told by Mobil executives during the 1995-1996 negotiations that the fee for placing Mobil 1 in a GM line of cars would be substantial and enough to retire on.  Apparently, Morrison continued the Mobil relationship without a written contract through 1999.  In January 2000, Morrison last met with Mobil executives and was informed that the parties would "get everything worked out."  After that meeting Morrison did not hear anything else from Mobil executives and did not perform additional services.

According to Defendant, the personal service contracts were designed to improve the relationship between Mobil and GM and get GM to use Mobil's synthetic oil as a factory fill for automobiles manufactured by GM.[1] According to Plaintiff, the personal service contract involved only improving the relationship between Mobil and GM, but the factory fill objective was "above and beyond the personal services contract fee." In some of the early contracts the placement of Mobil 1 in GM cars was a separate term of the contract and called for additional compensation of Morrison upon placement. (1993 contract). The 1994 contract and the original 1995 contract did not call for additional compensation for the placement of Mobil 1 in GM vehicles.

The record is also clear, that as of September 14, 1995, Mobil decided that instead of using Morrison in a duel role, to promote Mobil 1 via the race team and to build relationships with GM, Mobil decided Morrison was more beneficial to Mobil in expanding Mobil's placement of products with GM. From that point on, all the correspondence from Mobil emphasized Morrison's value in placing Mobil 1 in GM vehicles. Another letter, with some hand-written notes on it, dated August 24, 1995, from a Mobil executive to Morrison provides further evidence of Morrison's role in the relationship. The executive pointed out that without Morrison there was no way Mobil executives could have developed the right business relationships with various GM executives. The hand-written note on the letter, which was apparently made by a Mobil executive states, in part:

---

[1]. All vehicles manufactured are filled with fluids and oil by the manufacturer. Mobil wanted GM to use its synthetic oil (Mobil 1 synthetic motor oil) as a factory filled oil. Ordinarily the brand used by the manufacturer is not identified, but the relationship Mobil was trying to develop was a "branded" factory fill whereby GM would identify productions cars using the Mobil oil.

4

> This is one of the [...] reasons we have used Tommy.  I don't believe the input from the team [sic] that they can keep these types of relationships.  We, as a supplier, are naturally suspect by G.M. We can't afford to let this go-we have to keep it focused.

It is clear from the record that as of 2000 that various lines of vehicles were being factory filled with Mobil 1 synthetic oil.  As the record stands, it is not clear which models were factory filled or when it was started.

## **SUMMARY JUDGMENT STANDARD**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  The Court is required to "resolve all reasonable doubts about the facts in favor of the non-movant, and draw all justifiable inferences in his or her favor."  Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993) (quotations and citations omitted).

The moving party carries the initial burden of showing that there is an absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986).  The substantive law governing the case determines which facts are material, and "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).  For issues on which the non-movant bears the burden of proof at trial, the moving party "simply may

show—that is, point out to the district court—that there is an absence of evidence to support the non-moving party's case.  Alternatively, the moving party may support its motion for summary judgment with affirmative evidence demonstrating that  the non-moving party will be unable to prove its case." Fitzpatrick, 2 F.3d at 1116 (quotations and citations omitted).

If the moving party fails to overcome this initial burden, the Court must deny the motion for summary judgment without considering any evidence, if any, presented by the non-moving party.  Fitzpatrick, 2 F.3d at 1116.   If, on the other hand, the moving party overcomes this initial burden, then the non-moving party must show the existence of a genuine issue of material fact that remains to be resolved at trial.  Id.  Moreover, the adverse party may not respond to the motion for summary judgment by summarily denying the allegations set forth by the moving party.  Rather, the adverse party "must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."  Fed. R. Civ. P. 56(e).

## ANALYSIS

Defendant asserts that it is entitled to summary judgment on all of Plaintiff's claims. Plaintiff has alleged claims for breach of contract, fraud, *quantum meruit*, and unjust enrichment.  If the Court should find any of the contract claims survive, Defendant argues, in the alternative, that the claims are barred by the statute of limitations.

I. Contract Claims

Basic contract law states that a contract does not exist until there is a meeting of the minds, or an agreement by both parties.  O.C.G.A. 13-3-2.  Likewise, an alleged contract containing terms that are vague, indefinite, or uncertain cannot be enforced.  American Viking

Contractors, Inc. v. Scribner Equipment Co., Inc., 745 F.2d 1365 (11th Cir. 1984).

Defendant argues that there was no express contract between Morrison and Mobil to compensate Morrison separately for each line of vehicles that GM began to factory fill with Mobil 1 synthetic oil.[2] The record is clear that at least some of the earlier written personal services contracts did contain a provision for separate compensation for obtaining a factory fill on a GM line of vehicles. The original 1995 contract, however, did not contain such a provision. By September 1995, it is clear that the parties intended to change the terms of the contract relationship between Morrison and Mobil to separate the promotional duties from the factory fill duties. Other evidence in the record supports this conclusion.

Plaintiff does not argue with Defendant's contention that after September 1995 no express contract existed between the parties. Instead, Plaintiff argues that an implied contract existed between the parties and that Morrison can recover for the breach of the contract under the theory of *quantum meruit*.[3] Contrary to Defendant's argument, this distinction is critical.

Georgia law recognizes that parties can be as bound to an implied contract as to an express contract. Lincoln Land Co. V. Palfery, 130 Ga. App. 407 (1973). An implied

---

[2]. The parties do not make it clear if the entire relationship between Morrison and Mobil is at issue. The Court's review of the record, in conjunction with the motion and the briefs, seems to indicate that the actual time period is from sometime in 1995 through 2000.

[3]. Plaintiff's brief is somewhat convoluted and confusing in that it sometimes discusses the concepts of implied contract, *quantum meruit*, oral contract, and unjust enrichment as one legal theory of recovery and at other times as separate distinct theories of recovery. The Court's independent review of Georgia case law seems to indicate that the concepts are essentially different names for the same animal or terms used to discuss aspects of the same animal. For example, an oral promise can form the basis of an implied contract, while a measure of damages for the breach of an implied contract is *quantum meruit*. For the purposes of this opinion, the terms will be used as aspects of an implied contract.

contract is inferred by the law based on reason and not based on explicit language.  Young v. Lewis, 70 Ga. App. 627 (1944).  When one renders a valuable service for another, which the latter accepts, the law presumes there is an implied obligation to pay a reasonable fee for that service.  The value of the service is based on *quantum meruit.*  Nelson & Hill, P.A. v. Wood, 245 Ga. App. 60 (2000).

To recover for services rendered based upon *quantum meruit*, the plaintiff must show: (1) that his performed service had value to the defendant; (2) that the defendant requested or accepted the service; (3) that defendant did not compensate plaintiff for the service; (4) that plaintiff expected compensation for the service performed.  Synergy Worldwide, Inc. v. Long, Haymes, Carr, Inc., 44 F.Supp.2d 1348 (N.D. Ga. 1998).

In the case at bar, the record shows that there exists a genuine issue of material fact concerning whether there existed an implied contract between Morrison and Mobil for Morrison to provide a service.  There is evidence in the record to indicate that such service, to help place Mobil 1 synthetic oil as a factory fill in GM cars, was very valuable to Mobil and that Mobil asked Morrison to perform the service.  There is a genuine issue of material fact as to whether Morrison was paid or adequately paid for this service.[4]  There is substantial evidence in the record to show that Morrison expected to be compensated separately for his work on the factory fill.

Based on a reasonable application of Georgia law, it cannot be said that Defendant is entitled to summary judgment on Plaintiff's claims for breach of implied contract, *quantum*

---

[4]. Likewise, under the unjust enrichment theory of recovery, there appears to be a genuine issue of material fact concerning whether Mobil unjustly benefitted from Morrison's services.  Smith Service Oil Co., Inc. v. Parker, 250 Ga. App. 270 (2001).

*meruit*, and unjust enrichment. Therefore, as to those claims, Defendant's motion for summary judgment (Tab 32) is **DENIED.** To the extent that Plaintiff is relying on the theory of a breach of an express contract for the time in question, 1995 through 2000, Defendant's motion for summary judgment (Tab 32) is **GRANTED.**[5]

### II. Fraud

Defendant also seeks summary judgment on Plaintiff's fraud claim. Defendant makes a correct statement of the law when it states that mere breach of contract does not support a claim of fraud. O.C.G.A.§ 51-1-1; Servicemaster Co., L.P. v. Martin, 252 Ga. App. 751 (2001). It is also axiomatic that under Georgia law, it is traditionally difficult to prove a *prima facie* case of fraud. But just as with the contract claims, it is necessary to determine the exact nature of Plaintiff's fraud claim.

Under Georgia law, the elements of a basic claim of fraud are: (1) a misrepresentation by the defendant; (2) scienter or intent to deceive; (3) intent to induce the plaintiff to act or refrain from acting; (4) reasonable reliance by the plaintiff; and, (5) damages. Johnson v. University Health Services, Inc., 161 F.3d 1334 (11th Cir.1998); Rayle Tech, Inc. v. Dekalb Swine Breeders, Inc., 133 F.3d 1405 (11th Cir. 1998).

A close reading of Plaintiff's brief reveals that he is not alleging fraud because he was not paid or because Mobil breached a contract. Instead, Morrison claims Mobil committed fraud by falsely representing they would pay him for his services related to the factory fill

---

[5]. As it is not absolutely clear from the record and the briefs that Plaintiff is seeking damages for fraud or breach of contract concerning the written personal services contracts, the Court does not address such claims or opine on their merits. If Defendant's intent is for summary judgment on such possible claims, the motion (Tab 32) is **DENIED without prejudice.**

while knowing that it had no intention of doing so.  This claim in legal language is "fraudulent inducement."  In other words, Morrison claims that Mobil fraudulently induced him to perform services knowing it would not pay him for the services.

Georgia law recognizes that fraudulent inducement is a tort, not a contract claim. Velton v. Regis B. Lippert, Intercat, Inc., 985 F.2d 1515 (11th Cir. 1993).  As with basic fraud claims, fraudulent inducement includes the five elements of fraud. Velton, 985 F.2d at 1523-24.  In fact, the facts in Velton are close to the facts in the case at bar.  A president of a corporation promised the plaintiff a one-third share of the corporation if the plaintiff performed certain work.  At the same time, the plaintiff was induced to sign a consulting agreement for a set fee.  The Eleventh Circuit found that the district court erred when it entered summary judgment in favor of the defendant on the fraudulent inducement claim. Besides a very clear legal analysis of Georgia tort law, the court stated:

> If Velten's version is correct, Lippert repeatedly told Velten that he would be a one-third owner in Intercat even though Lippert had already incorporated Intercat with himself as sole shareholder. Given that Lippert had already incorporated Intercat without giving Velten any ownership interest, it would not be unreasonable for a juror to conclude that at the time of his alleged misrepresentations Lippert had no intention of making Velten a one-third owner of a company to be formed. Accordingly, there is a genuine issue of fact concerning Lippert's intention at the time of his alleged misrepresentations ... .

Id. at 1523-24.

If this Court views the affidavits, depositions and other evidence in the light most favorable to Morrison, as it is required to do, there is sufficient evidence that Mobil officials promised Morrison a substantial sum if GM began to factory fill a line of vehicles with Mobil 1 synthetic oil.  As Morrison and Mobil had a long business relationship, it was reasonable for

10

Morrison to rely on this promise and subsequent representations from Mobil executives that the details of the compensation plan were being "worked out." The record reflects that such a separate compensation plan was never completed and it can be inferred that there was never any such intention to "work out" the plan. The representations induced Morrison to continue his best efforts to successfully encourage GM to use Mobil 1 synthetic oil as a factory fill. Further, based on the previous facts and inferences, the scienter element can be inferred to be satisfied for summary judgment purposes. Therefore, Defendant's motion for summary judgement on Plaintiff's fraud and punitive damages claim (Tab 32) is **DENIED.**[6]

      Defendant also moved to strike Plaintiff's expert's opinion as to the value of Morrison's service to Mobil for failure to comply with the discovery order. (Tab 51). Further, Defendant has moved for sanctions for failure to comply with previous discovery requests. (Tab 27). The Court acknowledges that the expert's report and opinions were not timely disclosed to Defendant and that Plaintiff, either himself or his previous attorneys, failed to comply with the Court's original discovery order. The Court has previously dealt with Plaintiff's failure to comply with discovery requests when the Court awarded attorneys fees in conjunction with granting Defendant's motion to compel. (Tab 29). Plaintiff's previous failures to provide discovery responses, especially since original counsel has been replaced, does not warrant further sanctioning at this time. As to the motion to strike, the Court did not

---

      [6]. Defendant formally moved for judgment on the contract claims based on the statute of limitations. It is not clear from the briefs the extent of which agreements Plaintiff's contract claims apply and to which claims the statute of limitations defense should apply. Further, Defendant did not clearly articulate its arguments in reference to the applicability of the statute of limitations to the implied contract claim. Therefore, to the extent that the defense applies to the claims addressed in this opinion, the motion for summary judgment based on the statute of limitations (Tab 32) is **DENIED without prejudice.**

consider the opinion of Plaintiff's expert in deciding the motion. The value of Morrison's services to Mobil was not essential in addressing the legal issues raised by Defendant's motion for summary judgment. Therefore, Defendant's motions for sanctions (Tab 27) and to strike (Tab 32) are **DENIED.**

    **SO ORDERED**, this  28th  day of September, 2005.

                           /s/W. Louis Sands
                        **HON. W. LOUIS SANDS, CHIEF JUDGE**
                        **UNITED STATES DISTRICT COURT**